IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRANT DECATUR ALLEN,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

MOTION TO VACATE
28 U.S.C. § 2255

CIVIL ACTION FILE NO.
1:15-CV-1755-TCB-JKL

CRIMINAL ACTION FILE NO.
1:09-CR-320-5-TCB-JKL

## FINAL REPORT AND RECOMMENDATION

Movant, confined in the United States Penitentiary in Lewisburg, Pennsylvania, submitted a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate"). [Doc. 439.] For the reasons set forth below, I recommend that the motion to vacate be **DENIED**.

## I.     BACKGROUND

In 2010, Movant was arrested and charged with participation in a conspiracy to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime. [Doc. 1.] A superseding indictment was entered on August 16, 2011. [Doc. 227.] Count one charged Movant with conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(i). [*Id.* at 1.] Count two charged Movant with possession with the intent to distribute

cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and 18 U.S.C. § 2. [*Id.*]  Count three charged Movant with aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c) and 2. [*Id.*]  Count five charged Movant with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). [*Id.*]

At a trial held from September 19, 2011 through September 26, 2011, the government produced evidence of a conspiracy to distribute drugs among Movant, Jerry Chester, George Dunn, Donnie Zellner, and Alfredo Beeks.    The government's evidence originated from a number of sources, including:  (1) the May 10, 2008 raid of a house located at 187 Cleveland Street; (2) a May 23, 2008 traffic stop; (3) a May 30, 2008 investigation of a shooting that took place outside Movant's place of business, The Game Room; (4) the June 2, 2009 arrests of co-conspirators Beeks and Dunn; (5) a June 3, 2009 search of a residence at 920 Memorial Drive; and (6) the testimony of co-conspirator Beeks.

### 1.    187 Cleveland Street

The May 10, 2008 search of 187 Cleveland Street uncovered firearms, kilogram presses, ammunition, cell phones, a scale, drug packaging paraphernalia, a money counter, approximately 26 kilograms of cocaine, marijuana, and money. [Doc. 361 at 89-98.]    Officers also found documents bearing Chester's and

2

Zellner's names as well as a drug ledger with an entry listing "Grant – 10,000," a phone list containing the name "Grant," and a power bill in the name of Quienteisha O'Neal.  [Doc. 361 at 95, 98-102].   Beeks testified that "Grant" referred to Movant.  [Doc. 362 at 43.]   At the time, Zellner was living at the residence.  [Doc. 361 at 90.]  The house was outfitted with surveillance cameras, a reinforced front door, and burglar bars.  [*Id.* at 92-94.]

### 2.    May 23, 2008 Traffic Stop

On May 23, 2008, the vehicle Movant was driving was pulled over by DeKalb County police officers.  [Doc. 361 at 124-26.]  Zellner and Chester were passengers in the car.  [Doc. 361 at 136.]  After an unusual sequence of events, Movant eventually exited the vehicle upon the officers' requests and consented to a search of the vehicle.  [Doc. 361 at 127-184.]  A screening by a narcotics detection canine indicated the presence of narcotics on two bags on the floorboard of the car near where Zellner had been sitting, and on a suitcase that was located in the trunk of the vehicle.  [Doc. 361 at 138-39, 140-41, 148-49, 154, 179, 183-84.]  Inside one of the bags on the floorboard were two loaded handguns.  [Doc. 361 at 148-49.]  Inside the suitcase recovered from the trunk was over $310,000 bundled, rubberbanded, and separated in plastic containers.  [Doc. 361 at 148-51.]  An

officer testified that this packaging was consistent with drug deals.  [Doc. 361 at 151.]

All three occupants of the vehicle were presented with disclaimer of ownership forms.  [Doc. 361 at 143-44.]  Zellner and Chester signed the forms, disclaiming ownership of the money found in the trunk.  [Doc. 361 at 144.]  Allen did not claim ownership, but refused to sign the disclaimer.  [Doc. 361 at 143-45.]  Zellner claimed ownership of the firearms and was arrested for possession of the firearms as a convicted felon.  [Doc. 361 at 140, 157, 184.]

According to Beeks, he heard Chester say later that day:  "Donnie [Zellner] real man, Donnie real . . . Donnie took the charge for the pistol and the money," and "I just lost $300,000.  Then this man just got locked up for taking this charge for it."  [Doc. 362 at 109-10, 112, 215.]

### 3.    May 30, 2008 Search of The Game Room

On May 30, 2008, a shooting occurred in the parking lot outside of The Game Room.  [Doc. 361 at 191; Doc. 363 at 110-12]  A subsequent search of the premises by law enforcement uncovered a 9mm semi-automatic pistol on a shelf by a safe just outside Movant's interior office and a .40 caliber pistol in a Swisher Sweets cigar box just outside The Game Room's emergency exit.  [Doc. 361 at 195-98, 201; Doc. 363 at 111-12.]  An officer testified that the front area of the

4

business smelled like burned marijuana and the office smelled like raw marijuana. [Doc. 361 at 199.]

### 4.    June 2, 2009 Arrests

On June 2, 2009, officers were conducting surveillance at 920 Memorial Drive in response to information received from a confidential informant. [Doc. 363 at 10.] Beeks was pulled over by a law enforcement officer shortly after leaving the residence. [Doc. 363 at 40.] A narcotics K-9 alerted on the vehicle, and a subsequent search revealed a hidden compartment in the back seat containing over 6 kilograms of cocaine packed in individual bricks and a loaded 9mm handgun. [Doc. 363 at 44, 46-47.]

Not long after, Dunn was also pulled over by an officer after leaving 920 Memorial Drive. [Doc. 363 at 64.] A K-9 alerted on the back passenger door and then on the back seat of the car. [Doc. 363 at 98-99.] A subsequent search revealed another hidden compartment in the back seat containing over 8 kilograms of cocaine packaged in three gallon-size Ziploc bags and six individual bricks and over $738,000. [Doc. 363 at 73, 100-01.] Officers also recovered a slip of paper bearing "G. 20,000" near the trunk area of the vehicle. [Doc. 363 at 72.]

**5.      June 3, 2009 Search of 920 Memorial Drive**

On the morning of June 3, 2009, investigators executed search warrant at 920 Memorial Drive, #25.  [Doc. 364 at 33-34.]  Agents recovered drug ledgers, cocaine wrappers with residue, firearms, digital scales, documents bearing Zellner's name, kilogram presses, gallon-size plastic Ziploc bags containing a cocaine cutting agent, 10.2 grams of cocaine, money counters, $10,900, seven cell phones, United States Probation documentation for federal probationer Sophia Harvey, a Hertz rental agreement for a car rented by Movant identifying Sophia Harvey as the authorized driver, a DeKalb County jail visitation registration document showing that Harvey visited Chester on May 31, 2009, Western Union receipts, including one reflecting a $400 payment from Beeks to Harvey, and a prescription for Chester.  [Doc. 362 at 90-91; Doc. 364 at 35-67.]  The drug ledgers contained entries for drug transactions in 2009, including quite a few entries reflecting transactions with "Grant" and "G."  [Doc. 362 at 91-105, 168-69.]

The government also introduced evidence that Movant helped secure the residence at 920 Memorial Drive, #25 for use as a stash house.  Specifically, Movant supplied Quienteisha O'Neal with falsified employment documentation that allowed her to show sufficient income to rent the townhouse.  [Doc. 362 at 217-23.]  O'Neal was also connected to the Cleveland Street stash house.

6

### 6.     Testimony of Alfredo Beeks

Movant's co-conspirator, Alfredo Beeks, testified at trial.  His testimony connected Movant to another stash house located at 737 Lee Andrews Avenue. [Doc. 362 at 41.]  According to Beeks, Movant leased the house for Chester and paid the rent with money Chester gave him.  [Doc. 362 at 61-62.]  Movant also had a room at the house.  [Doc. 362 at 41.]  Like the others, this stash house was outfitted with security cameras, burglar bars on the windows, and secured doors. [Doc. 362 at 65-66.]

Beeks further testified that Movant was present at the stash houses when guns and drugs were out in the open, that Movant carried firearms at the stash houses, and that Movant participated in drug transactions for Chester.  [Doc. 362 at 42-46, 163-64.]

After hearing all the evidence, the jury found Movant guilty of counts one, two, three, and five of the indictment.  [Doc. 304.]  On January 19, 2012, the Court sentenced Movant to life imprisonment – life on each of counts one, two and five, to run concurrently, and 60 months' imprisonment on count three, to run consecutively to the other counts.  [Doc. 338.]

Movant filed a timely appeal, challenging:  (1) the district court's purported failure to conduct a full jury investigation after one juror introduced extrinsic

7

information to the jury; (2) the district court's exclusion of Movant's proposed character evidence; (3) the district court's failure to give multiple conspiracy jury instructions; (4) the district court's admission of Movant's three prior felony drug convictions under Rule 404(b); (5) the district court's admission of inextricably intertwined intrinsic evidence; (6) the district court's admission of non-hearsay, co-conspiracy statements; (7) the sufficiency of the evidence on all counts; and (8) Movant's life imprisonment sentence on count five. [Doc. 391.]  On August 14, 2013, the Eleventh Circuit affirmed Movant's conviction and sentence, noting that "the strength of the government's case [against Movant] was close to overwhelming." [Doc. 391 at 7; Doc. 392.]  On May 19, 2014, the Supreme Court denied Movant's petition for writ of certiorari. [Doc. 399.]

On May 15, 2015, Movant timely filed the motion to vacate currently before the Court.   In his motion, Movant asserts a number of claims, including: (1) ineffective assistance of counsel, (2) being "deprived of a unanimous jury verdict when the jury was allowed to use both 'aiding and abetting,' and 'conspiracy' as a means for determining culpability on the count charging 18 U.S.C. § 924(c) violation," and (3) trial counsel's failure to negotiate a reasonable plea agreement. [Doc. 439 at 1.]  Movant's ineffective assistance of counsel claims are broad and include a multitude of alleged errors:  (1) trial counsel failed

to object to Detective Amnicki testifying as an expert witness; (2) trial counsel made no objection to or did not make a motion to strike the testimony of government witness, Alfredo Beeks; (3) trial counsel failed to object to the prosecutor's closing argument; (4) trial counsel failed to seek suppression of evidence from a May 23, 2008, traffic stop, (5) trial counsel failed to interview witnesses at Movant's suggestion and otherwise did not always heed Movant's advice about how to conduct the case; (6) trial counsel failed to renew a Rule 29 motion for acquittal at the close of all evidence; (7) trial counsel did not seek to dismiss firearms charges; (8) trial counsel did not object to the introduction of evidence regarding a murder at Movant's place of business; (9) trial counsel failed to object to introduction of his prior convictions; (10) trial counsel failed to present evidence that Movant did not enjoy a lavish lifestyle while he was alleged to be involved in a drug conspiracy; and (11) trial counsel failed to object to the drug quantity attributed to him.  [Doc. 439 at 19 – Doc. 439-1 at 14.]

On February 22, 2016, June 13, 2016, and August 26, 2016, Movant filed motions for leave to amend.  [Docs. 472, 479, 488.] By Order dated August 4,

2016, the Court granted leave to amend the motion to vacate to include additional arguments made in support of "Ground two" of the motion to vacate.[1]  [Doc. 485.]

Respondent filed responses to the motion to vacate on January 25, 2016 and June 6, 2016. [Docs. 465, 478.]

## II.    RELEVANT LEGAL STANDARDS

### A. The Standard for Relief Under § 2255

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is otherwise subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).   Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982),

---

[1] Movant also sought leave to add a claim based on *Johnson v. United States*, 135 S.Ct. 2551 (2015), to which the government filed a response on July 6, 2016. [Docs. 479, 484.] The Court denied the motion for leave to amend with respect to the *Johnson* claim in its August 4, 2016 Order.  [Doc. 485.]

and it is the movant's burden to establish his right to collateral relief, *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, __ U.S. __, 136 S.Ct. 267 (2015).

Matters decided on direct appeal cannot be re-litigated under § 2255, and matters that could have been raised on direct appeal, but were not, generally are foreclosed in § 2255 proceedings. *Hidalgo v. United States*, 138 F. App'x 290, 291, 294 (11th Cir. 2005) (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004), and *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)). Claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent (1) a showing of cause for the default and actual prejudice or (2) a showing of a fundamental miscarriage of justice or actual innocence. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). Thus, § 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232 (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); *see also Massaro v. United States*, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of

counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).

### B.    *Strickland v. Washington*

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).  To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken.  *Id.* at 1315.

12

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, *i.e.*, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III.   DISCUSSION

Movant contends that his conviction and sentence should be vacated on the following grounds:  (1) he was denied the effective assistance of counsel; and (2) he was deprived of a unanimous jury verdict.  I will address each of these grounds in turn below.

### A.   Ineffective Assistance of Counsel.

Movant contends that his Sixth Amendment right to counsel was violated because his counsel rendered ineffective assistance for a host of reasons.  After a careful review of Movant's arguments, the pleadings, and transcripts in this case, I find this ground to be without merit.

### 1.    Trial Counsel's Failure to Object to the Testimony of Detective Amnicki

Movant states in his initial motion to vacate that trial counsel's assistance was ineffective because he:

> made no objection to Detective Amnicki testifying as an expert witness during the jury trial in regards to cocaine prices; methodology employed by cocaine dealers in marketing their product; the sources and origin of cocaine sold in the State of Georgia; and testimony that the prices varies [sic] in accordance with Race; or ethnicity, of the Purchaser.

[Doc. 439 at 19.]  The record shows that Detective Amnicki did not testify as an expert witness.  [Doc. 361 at 202-13; Doc. 362 at 5-22.]  Pursuant to Federal Rule of Evidence 701,

> [i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a)   rationally based on the witness's perception;
> (b)   helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c)   not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Ev. 701.  Detective Amnicki testified about his personal knowledge based on his participation in drug trafficking investigations.  [Doc. 361 at 202-13; Doc. 362 at 5-22.]  His testimony regarding cocaine prices and methodology used by cocaine dealers, and sources of cocaine sold in Georgia was lay-witness testimony based on his prior experience as a drug enforcement officer, and was thus proper

and admissible under Federal Rule of Evidence 701.  *United States v. Feliciano*, 300 F. App'x 795, 801 (11th Cir. 2008) ("[P]olice officers can testify as lay witnesses 'based upon their particularized knowledge garnered from years of experience within the field.'") (citing *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003)).  Because Detective Amnicki's testimony was proper, defense counsel was not ineffective for failing to object to it.  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (attorney not ineffective for failure to raise non-meritorious issues); *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (same).

The record also shows that defense counsel, did, in fact, move to exclude the government's introduction of expert witness testimony.  [Doc. 269.]  That motion was granted in part on September 16, 2011, excluding the expert testimony of Detective Morrison.  [Doc. 285.]  The government did not seek the introduction of testimony of any other expert witness.

### 2.    Trial Counsel's Failure to Object to Testimony of Alfredo Beeks

Movant argues that defense counsel was ineffective because he did not move to strike the testimony of Alfredo Beeks as being incredible and contradictory. [Doc. 439 at 20.]  There is no indication from the record that counsel had grounds for moving to strike Beeks' testimony.   "[C]redibility determinations are the

exclusive province of the jury and we must accept them unless the testimony is incredible as a matter of law." *United States v. Gachette*, 382 F. App'x 821, 822 (11th Cir. 2010) (quoting *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997)).  To be considered incredible as a matter of law, a witness's testimony must be "unbelievable on its face, i.e., testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985) (quoting *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978)) (internal quotation marks and citation omitted); *see also United States v. Hewitt*, 663 F.2d 1381, 1385-86 (11th Cir. 1981) (citing *United States v. Tiche*, 424 F. Supp. 996, 1000-01 (W.D. Pa. 1977), *aff'd mem.*, 564 F.2d 90 (3d Cir. 1977)) (jury verdict is not improper even though based on the testimony of "an array of scoundrels, liars and brigands").

Beeks' testimony was not incredible as a matter of law.  Moreover, defense counsel engaged in a vigorous cross examination of Beeks at trial and argued at length in his closing argument that Beeks was unbelievable and his testimony should be disregarded.  [Doc. 362 at 148-75; Doc. 364 at 230-49.]  Defense counsel also argued in his motion for directed verdict that Beeks could not be believed.  [Doc. 364 at 102.]  Moreover, the trial court instructed the jury that

Beeks' testimony should be considered with more caution than other witnesses. [Doc. 365 at 12-14.]  Under these circumstances, defense counsel did not render ineffective assistance of counsel for not moving to strike Beeks' testimony.[2]

### 3.    Trial Counsel's Failure to Object to Prosecutor's Closing Argument

Movant argues that trial counsel was ineffective because he "remained mute during the prosecutor's Closing Argument, and failed to object to a number of arguments that were not supported by the record; that were in conflict with the allegations of the indictment and/or the court's jury instructions; which encouraged jurors to return a guilty verdict on a basis that was not charged by the indictment or authorized by the court's jury instructions."  [Doc. 439-1 at 30-31.]  Movant does not identify any specific statements that he alleges are improper and my review of the transcript does not reveal any statements that would render defense counsel's failure to object tantamount to ineffective assistance.  [Doc. 364 at 202-230, 269-277.]

---

[2] In arguing that defense counsel moved to strike Beeks' testimony, Movant also briefly references counsel's "inability to be in court on a timely basis."  [Doc. 439 at 23.]  The undersigned notes that it was counsel for Movant's co-defendant who was chastised for being late.  [Doc. 364 at 3.]  There is no indication from the record that Movant's counsel was ever late to court.

**4.     Trial Counsel's Failure to Seek Suppression of Evidence from May 23, 2008 Traffic Stop**

Movant argues that counsel was ineffective for failing to move for suppression of the firearms, money, and the identity of the occupants of the vehicle for the May 23, 2008 traffic stop. [Doc. 439 at 24.] Defense counsel, did, in fact, file a motion to suppress the evidence seized and statements made in connection with the May 23, 2008 traffic stop. [Doc. 137.] The motion was denied by order dated February 4, 2011, which adopted the Report and Recommendation of the Magistrate Judge dated January 14, 2011. [Docs. 193, 188.] Defense counsel filed objections to the Report and Recommendation. [Doc. 190.] Defense counsel also successfully argued to exclude testimony that the stop was initiated based on a tip from a confidential informant, who claimed that the occupants of the car were on their way to purchase a large amount of cocaine.[3]   [Doc. 361 at 123-25.] Movant's argument that defense counsel failed to seek suppression of the evidence seized from the May 23, 2008 traffic stop is not supported by the record.

While defense counsel did not seek suppression of the identity of the occupants of the vehicle, any objection or motion to suppress such evidence would

---

[3] Defense counsel also moved for a directed verdict at the close of the government's evidence, arguing that Movant should not be held accountable for the guns seized in the May 23, 2008 traffic stop. [Doc. 364 at 96-102.]

have been denied as this information was clearly relevant to the conspiracy charged in the indictment. Movant identifies no legal basis for excluding this evidence. Accordingly, Movant has failed to show that his attorney's performance was unreasonable with respect to the May 23, 2008 traffic stop.

### 5.    Trial Counsel's Failure to Follow Movant's Advice

Movant argues that trial counsel "failed to pay attention to the information and ideas from the petitioner, and potential defense witnesses, without conducting an investigation into their respective stories, or, for that matter, even considering them, whether or not such consideration or investigation would have yielded the conclusion in every instance that anything should have been done in addition to or different from what was done." [Doc. 439 at 24.] Movant does not identify any specific witness that defense counsel should have interviewed and who should have testified at trial or to what that specific witness would have testified. Nor does Movant identify what information or ideas Movant presented to defense counsel that were ignored. In sum, Movant does not contend any particular investigation of facts or witnesses would have changed the outcome of the case.

"Defense counsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim," *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)),

especially where the Court is being asked to speculate as to who these witnesses are and what they would have testified. *Buckelew*, 575 F.2d at 521 (holding that claims of ineffective assistance based on "uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative"). "It does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance. Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (alteration and citation omitted). "[N]o absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317 (citing *Strickland*, 466 U.S. at 688-89). Rather, counsel's decision whether or not to investigate a particular theory or witness "need only be reasonable to fall within the wide range of competent assistance." *Id.* (citing *Strickland*, 466 U.S. at 691). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Id.* at 1318 (citing *Strickland*, 466 U.S. at 690-91). Counsel is not "required to pursue every path until it bears fruit or until all hope withers."

*Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) (quoting *Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir. 1987) (internal quotation marks omitted)). "[G]iven the finite resources of time and money that face a defense attorney, it simply is not realistic to expect counsel to investigate substantially all plausible lines of defense. A reasonably competent attorney often must rely on his own experience and judgment, without the benefit of a substantial investigation, when deciding whether or not to forego a particular line of defense . . . ." *White v. Singletary*, 972 F.2d 1218, 1224 (11th Cir. 1992) (quoting *Gates v. Zant*, 863 F.2d 1492, 1498 (11th Cir. 1989)).

Where, as here, a movant fails to specify the identity of the uncalled and uninvestigated witness and fails to specify the evidence that witness could have offered, it is impossible to determine whether a reasonable attorney would have investigated or called that witness. It is also impossible to determine whether that witness's testimony would have changed the jury's verdict. Thus, Movant cannot show that he was prejudiced by defense counsel's alleged failure.

### 6.    Trial Counsel's Failure to Renew His Rule 29 Motion at the Close of All Evidence

Movant argues that defense counsel provided ineffective assistance because he did not renew a Rule 29 motion at the close of all evidence. [Doc. 439 at 26.] In support of his argument, Movant states that the charged conspiracy involved

"marijuana, cocaine, and cocaine-base" and that defense counsel should have renewed his motion for directed verdict because the government offered no proof of his participation in a conspiracy with anything other than marijuana. Movant misconstrues the charges in the indictment as well as the evidence presented at trial.

Movant was charged and convicted of participation in a conspiracy to possess with the intent to distribute cocaine, and aiding and abetting in the attempt to possess with the intent to distribute cocaine. [Doc. 338.] Much evidence was submitted at trial regarding the conspiracy to possess and distribute cocaine. The government also proffered evidence establishing Movant as a participant in that conspiracy. [Doc. 361 at 102, 127-143, 173-187; Doc. 362 at 41-50, 62, 66-67, 76, 80-83, 97-104, 108-12, 115, 117, 145, 147, 215, 217-222; Doc. 363 at 72, 160, 181-190; Doc. 364 at 38, 65, 71.] Defense counsel argued in his Rule 29 motion after the close of the government's case that there was not sufficient credible evidence to tie Movant to a drug conspiracy. [Doc. 364 at 99, 101-02.] The Court rejected this argument and denied the Rule 29 motion. [Doc. 364 at 109.]

Movant fails to establish that renewing the Rule 29 motion at the close of all evidence would have resulted in a different outcome. A careful review of the record does not reveal any key piece of evidence that would have changed the

Court's first ruling.  Movant has not shown that defense counsel's failure to renew his motion was objectively unreasonable, nor has he demonstrated that the Court was likely to have reached a different conclusion upon the renewal of the motion. Accordingly, Movant has not established that he was prejudiced by defense counsel's failure to renew his Rule 29 motion.

### 7.   Trial Counsel's Failure to Move to Dismiss All Firearms Charges

Movant contends that defense counsel rendered ineffective assistance because he did not move to dismiss the firearms charges arising from the May 23, 2008 traffic stop.  Defense counsel did, in fact, move to dismiss the firearms charges.  [Doc. 23.]  Defense counsel also moved to prevent the government from introducing evidence of the guns seized from the May 23, 2008 traffic stop.  [Doc. 137.]  Moreover, defense counsel argued in support of his Rule 29 motion that the government had not sufficiently connected Movant to the guns seized in the May 23, 2008 traffic stop.  [Doc. 364 at 96-102.]  The Court rejected these arguments. Defense counsel is not ineffective for failing to make a motion that he did, in fact, make.

### 8.   Trial Counsel's Failure to Object to the Introduction of Evidence of a Murder at the Game Room

Movant argues that trial counsel was ineffective because he "registered no objection to testimony concerning a murder which occurred in the shopping center's parking lot where Grant Allen's business (The Game Room) was located." [Doc. 439 at 28.]   Defense counsel actually moved to exclude evidence of the shooting completely in a motion filed prior to trial.  [Doc. 269.]  The Court granted the motion, in part, allowing evidence that there was a shooting, but excluding evidence that the shooting resulted in a homicide.  [Doc. 274; Doc. 363 at 111.]  It was made clear to the jury that the shooting occurred in the parking lot of the shopping center in which the Movant's business was located, and not inside the business itself.  [Doc. 363 at 112-13.]   Because defense counsel did attempt to exclude evidence of the shooting, this argument is without merit.

### 9.   Trial Counsel's Failure to Object to Introduction of Movant's Prior Convictions

Movant contends that trial counsel was ineffective because he did not object to the introduction of his prior convictions.  [Doc. 439-1 at 2.]  Defense counsel did, in fact, attempt to exclude Movant's prior convictions from evidence.  Defense counsel filed a motion in limine seeking to exclude the nature of the prior convictions, asserting that Movant would stipulate that he was a convicted felon,

which was relevant to the felon in possession charge. [Doc. 237.] Defense counsel further filed an objection to the government's intent to offer evidence of other crimes pursuant to Federal Rule of Evidence 404(b). [Doc. 247.] The Court denied the motion to exclude the nature of the prior convictions on the ground that those convictions were relevant to show Movant's intent with respect to crimes charged in the indictment. [Doc. 270 at 3.] The Court also ruled that a limiting instruction was appropriate and such an instruction was given. [*Id.*; Doc. 363 at 135-36; Doc. 365 at 14.] Movant challenged the admission of his prior convictions on direct appeal, and the Eleventh Circuit rejected his argument, finding that: "Allen's prior drug convictions in 1990, 1994, and 2007 were properly admitted under Rule 404(b) as relevant to intent." [Doc. 391 at 8.] Counsel is not ineffective for failing to object because he did seek to exclude this evidence. To the extent that he did not object, defense counsel is not ineffective for failing to raise a non-meritorious claim. *Chandler*, 240 F.3d at 917.

### 10. Trial Counsel's Failure to Present Evidence that Movant Did Not Enjoy a Lavish Lifestyle

Movant contends that "[d]efense counsel did not provide effective assistance when he omitted to present a defense based on the absence of any proof that he was enjoying a lavish lifestyle during the period that the drug conspiracy was in existence." [Doc. 439-1 at 13.] Movant further states that "if jurors had been

25

informed of Grant Allen's economic status, that they would not have found him responsible for the total quantity of cocaine alleged in the indictment, or, that he was a member of the charged conspiracy." [*Id.* at 14.]

"[C]ounsel's reliance on particular lines of defense to the exclusion of others . . . is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *Chandler*, 218 F.3d at 1818.  Defense counsel did introduce some evidence of Movant's financial situation – that Movant purchased The Game Room for $40,000, that he refinanced his home to obtain the down payment, and that still owes $10,000 for it.  [Doc. 361 at 67; Doc. 364 at 164-65.]  Movant has not shown that counsel's actions were unreasonable.

Moreover, Movant has not shown that he was prejudiced by defense counsel's failure to specifically argue that Movant was not rich.  Dunn's counsel presented evidence at trial that Dunn did not have "fancy or expensive clothes or jewelry" or "valuable property or any significant amount of money."  [Doc. 364 at 191.]  Dunn's counsel also argued in closing that Dunn did not fit the profile of a drug dealer "driving fancy cars and wearing expensive clothes and jewelry."  [*Id.* at 262.]  Despite this evidence and counsel's argument, the jury still found Dunn guilty on all counts charged in the indictment.  [Doc. 326.]   Under these circumstances, Movant has not shown prejudice.

26

### 11.    Failure to Object to Drug Quantity

Movant argues that his counsel was ineffective because he failed to object to the drug quantity determined by the PSI.  Defense counsel did object to the drug quantity attributed to Movant at the sentencing hearing.   [Doc. 373 at 2-7.] Defense counsel's objection was sustained with respect to any drug quantities based on the testimony of co-defendant Beeks, but the Court still attributed to Movant drug quantities connected to the stash houses.  [*Id.* at 7.]  Defense counsel cannot have been deficient for failing to make an objection that he did, in fact, make.  Thus, Movant is not entitled to relief with respect to this ground.

### 12.    Trial Counsel's Failure to Negotiate a Reasonable Plea Deal

Movant states that defense counsel was ineffective because he misconstrued the impact of the government's plea deal.  According to Movant, the government offered a plea deal that would have required Movant to spend only 15 years in prison, but defense counsel informed Movant that the plea deal would require him to spend 25-30 years in prison.   According to Movant, had defense counsel explained that the plea deal would only require him to spend 15 years in prison, he would have accepted the plea deal and not gone to trial.

Movant misconstrues the offer that was made by the government.  There was no deal that would have guaranteed Movant only 15 years in prison.  Rather, under

the offered plea agreement, Movant would plead guilty to Count Two of the superseding indictment (possession with the intent to distribute cocaine), agree to cooperate in the government's continued investigation, and, in exchange, the government would dismiss all other counts, dismiss the § 851 sentencing enhancement, and recommend up to a three-level acceptance of responsibility reduction. [Doc. 465 Ex. A. at 2, 5-6, 8.] That would have changed Movant's sentencing range from a mandatory minimum of life imprisonment to a mandatory minimum of ten years' imprisonment and a maximum penalty of life imprisonment. [*Id.* at 3-4.] As stated in Respondent's brief, the government did not offer to recommend that Movant be sentenced at the low end of the guidelines range, nor did the government agree not to seek other upward adjustments. [Doc. 465 Ex. A.]

The sentence Movant would ultimately receive depended upon a number of factors outside of defense counsel's control. The plea agreement expressly provided that

> before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines and that, under certain circumstances, the Court has the discretion to depart from those Guidelines. . . . [T]he Court may impose a sentence up to and including the statutory maximum as set forth in this paragraph and that no one can predict the Defendant's exact sentence at this time.

[Doc. 465 Ex. A at 4.]  Further, there was no way for defense counsel to know with certainty what sentence might be imposed until the pre-sentence investigation report was prepared, the government and defense made objections to the PSI, and the Court imposed its sentence.  As Respondent points out in its brief, Movant's sentence could have been in the 25-30 year range.

Even assuming that defense counsel gave Movant constitutionally defective advice, Movant has not shown that he was prejudiced by defense counsel's representation.  Specifically, Movant alleges that he would have accepted a plea agreement that would have guaranteed him no more than 15 years in prison and that would preserve his rights to appeal.[4]  No such deal was on the table.  The plea agreement offered by the government would have left him open to a sentencing range from 210 to 405 months,[5] and required Movant to waive his right to appeal or collaterally attack his conviction and sentence unless the government sought an upward departure or upward variance from the sentencing guidelines.

---

[4] Movant states in his motion that had defense counsel explained that it was in his best interest to accept the plea agreement, Movant "would have negotiated a plea deal for a lesser penalty upon terms and conditions that he be allowed to preserve his right(s) to Appeal issues that he felt were necessary and that would have been properly preserved for further review."  [Doc. 439-1 at 20.]

[5] *See* Doc. 465 at 45-47.

Where a defendant claims that ineffective assistance led to the rejection of a plea offer, he "must show that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, *that the defendant would have accepted the plea* and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offers' terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) (emphasis added). Here, Movant has not shown that he would have accepted the terms of the plea deal actually offered by the government – the possibility of up to 405 months in prison and a very limited right to appeal. Accordingly, his ineffective assistance claim must fail.

### B.    Unanimous Jury Verdict

Movant also contends that he was "deprived of a unanimous jury verdict" because the jury was "allowed to use both 'aiding & abetting', and 'conspiracy'" to find Movant guilty of violating 18 U.S.C. § 924(c) (aiding and abetting in the possession of a firearm in furtherance of a drug trafficking crime). [Doc. 439 at 19.] Respondent argues that this claim is procedurally barred based on Movant's failure to raise it on appeal. [Doc. 478 at 7.]

The undersigned agrees with Respondent.  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."  *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (citing *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989)).  Movant's Ground Two presents a claim that was available on direct appeal.  Movant fails to show cause and prejudice for failing to raise it and, therefore, does not overcome his default.  Accordingly, Ground Two fails.

## IV.   MOTION TO AMEND

On August 26, 2016, Movant filed a third motion to amend.  He asks the Court to consider the holding in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), in ruling on his motion and submits a lengthy discussion of the holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  Nothing in this latest motion to amend bears on the issues presented in Movant's original motion to vacate.  As a result, it does not relate back to the original motion pursuant to Federal Rule of Civil Procedure 15 and is untimely.  The motion to amend is **DENIED**.  [Doc. 488.]

## V.   CERTIFICATE OF APPEALABILITY ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under

28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

It is not reasonably debatable that Movant's claims in his motion to vacate are either barred or lack merit.  Because Movant has not substantially shown that he was denied a constitutional right, a COA is not warranted.  *See* 28 U.S.C. § 2253(c)(2); *Slack v . McDaniel*, 529 U.S. at 483-84.

## VI.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the motion to vacate be **DENIED.**  Further, Movant's motion to amend [Doc. 488] is **DENIED.**

**IT IS SO ORDERED AND RECOMMENDED** this 21st day of September, 2016.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE